

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

------------

**NO. 2-07-375-CV**

KRIS CARR                                             APPELLANT/CROSS-APPELLEE

V.

CITY OF FORT WORTH, TEXAS,                 APPELLEES/CROSS-APPELLANTS
AND FIRE CHIEF RUDOLPH
JACKSON, JR.

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

This is a cross-appeal from a partial plea to the jurisdiction and from competing motions for summary judgment involving the alleged failure of Appellees—the City of Fort Worth and Fire Chief Rudolph Jackson, Jr.—to promote Appellant Kris Carr to the rank of fire engineer under the local government code. At issue in the underlying lawsuit was whether the procedurally defective discharge of fire engineer Artie M. Dawson created as a

matter of law a vacancy in the rank of fire engineer prior to her reinstatement such that Carr, who was at the top of the promotion eligibility list,[1] should have been promoted. The trial court denied Carr's motion for summary judgment, granted Appellees' motion for summary judgment, and denied as moot Appellees' partial plea to the jurisdiction. Because we hold that the summary judgment evidence conclusively establishes as a matter of law the existence of a vacancy, we reverse the summary judgment in favor of Appellees and the summary judgment against Carr on that issue. However, because the City may be immune from suit, we remand the case for further proceedings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Prior to February 2002, the Fort Worth Fire Department placed fire engineer Dawson on "detached duty" for one year while the department investigated her for alleged departmental violations. "Detached duty" status required Dawson to stay home from work and routinely call in to the fire department.

---

[1] The parties agree that Carr was the person at the top of the fire engineer promotion eligibility list on February 15, 2002, after taking into account that Calvin C. Lyons III was later promoted to the rank of fire engineer, and his promotion was backdated to November 1, 2001.

2

On February 14, 2002, as a result of the investigation, Fort Worth Fire Chief McMillen[2] gave Dawson notice that she was being indefinitely suspended without pay. The letter stated that the suspension would take effect on February 15, 2002 at 0800 hours. Dawson filed a written appeal of the suspension with the Director of the Civil Service Commission on February 26, 2002. At this point, it was discovered that Fire Chief McMillen had failed to file a copy of the indefinite suspension letter with the Commission as required by the local government code. Due to the fire chief's failure to give the Commission the procedurally required notice of Dawson's suspension, Dawson "was returned to duty on February 28, 2002." The fire chief did not promote anyone to the rank of fire engineer to fill Dawson's position during the fourteen days that she was suspended.

Because Carr believed that Dawson's indefinite suspension created a vacancy and because Carr believed that he should have been promoted, he filed suit against the City seeking declaratory, injunctive, and equitable relief. Both parties filed motions for summary judgment, and Appellees filed a partial plea to the jurisdiction. The trial court denied Carr's motion for summary judgment, granted Appellees' motion for summary judgment, and denied as moot

---

[2] Carr amended his petition to add Rudolph Jackson, Jr., the current fire chief.

3

Appellees' partial plea to the jurisdiction. Both Carr and Appellees filed notices of appeal.

### III. STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.,* 73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). But we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores,*

4

*Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin*, 589 S.W.2d at 678.

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Valence Operating Co.*, 164 S.W.3d at 661. The reviewing court should render the judgment that the trial court should have rendered. *Id.*

## IV. PROCEDURES UNDER CHAPTER 143

Before turning to the parties' pleadings and jurisdictional evidence, it is helpful to first survey the statutory context in which this proceeding arises—chapter 143 of the local government code—because it involves a maze of procedural hoops.

Chapter 143 of the local government code, entitled "Municipal Civil Service For Firefighters And Police Officers," is intended "to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public

5

servants." TEX. LOC. GOV'T CODE ANN. § 143.001(a) (Vernon 2008). To that end, positions in the fire and police departments of municipalities governed by chapter 143 are classified, receive civil service protection, and are filled from promotion eligibility lists based on objective, merit-based qualifications and competitive testing. *Id.* § 143.021.

Municipalities are not automatically governed by chapter 143. Instead, the legislature has permitted municipalities with a population of 10,000 or more that have a paid fire department and police department to opt into the chapter 143 regime through a local election. *Id.* § 143.002. The voters of Tarrant County have approved the adoption of chapter 143, and at all times relevant to this case, it has governed the City's fire and police departments.

In a municipality like the City that is governed by chapter 143, the municipal governing body establishes by ordinance the classifications and number of positions in each classification. *Id.* § 143.021(a). In this manner, the governing body can create new positions or, within certain limitations, abolish them. *See City of San Antonio v. Wallace*, 161 Tex. 41, 43–50, 338 S.W.2d 153, 155–59 (1960); *Michna v. City of Houston*, 521 S.W.2d 331, 334–35 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ).

Promotion eligibility lists for vacancies in each non-entry level classification are created by administering a competitive written exam open to

promotion-eligible candidates. *See* TEX. LOC. GOV'T CODE ANN. §§ 143.028, 143.030, 143.032. Based on the candidates' exam scores and additional points awarded based on seniority, passing candidates are ranked on a promotion eligibility list. *Id.* § 143.033(b)–(c). Each promotion eligibility list remains in effect for one year after the date on which the exam was given, "unless exhausted" earlier. *Id.* § 143.036(h). As vacancies arise, the commission shall submit names from the list to the department head until each vacancy is filled or the list is exhausted. *Id.* § 143.036(c). The top-ranked candidate on a promotion eligibility list at the time a vacancy occurs has the "primary right" to be appointed to fill the vacancy not later than the last day of the sixty-day statutory period in which the department head is required to fill the vacancy, and failure to timely fill the vacancy results in the top-ranked candidate's entitlement to the appointment, as a matter of law, effective on the sixtieth day. *Lee v. Downey*, 842 S.W.2d 646, 649 (Tex. 1992) (stating that "[a] promotion is considered effective as of the last date that the city could lawfully have filled the vacancy; that is, sixty days from the date the vacancy was created"); *Duckett v. City of Houston*, 495 S.W.2d 883, 887 (Tex. 1973); *Klinger v. City of San Angelo*, 902 S.W.2d 669, 673–74 (Tex. App.—Austin 1995, writ denied).

## V. Vacancy Created by Dawson's Suspension

In his first issue, Carr argues that the trial court erred by granting Appellees' motion for summary judgment and by denying his motion for summary judgment. Specifically, Carr argues that Appellees violated Texas Local Government Code section 143.036 by failing to promote him to fire engineer upon Dawson's indefinite suspension. Under his first issue, Carr raises five subissues regarding whether, in light of Appellees' procedural error, a discharge occurred; whether a vacancy was created; whether the fire chief was required to fill the vacancy from the existing fire engineer promotion eligibility list; whether Carr should have received the promotion; and if so, whether Carr is entitled to a writ of mandamus from the trial court compelling his promotion and backpay. We tackle these subissues in turn.

### A. Dawson's Suspension

Appellees argued that the attempted suspension of Dawson never took effect because the fire department did not comply with the chapter 143 requirement that the suspension letter be filed with the Commission. Carr argues that this procedural error did not render Dawson's discharge void.

Section 143.052 governs disciplinary suspensions and states,

*If the department head suspends a fire fighter* or police officer, the department head shall, within 120 hours after the hour of suspension, file a written statement with the commission giving the

8

reasons for the suspension.  The department head shall immediately deliver a copy of the statement in person to the suspended fire fighter or police officer.

TEX. LOC. GOV'T CODE ANN. § 143.052(c) (emphasis added).  To interpret the statute, we look first to the "plain and common meaning of the statute's words."  *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999).  If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning.  *Id.*

Because neither side urges that the statute is ambiguous, we interpret the statute according to its plain meaning.  Our reading of the statute reveals that the 120-hour filing requirement is not a prerequisite to the suspension.  In fact, the 120-hour requirement is not triggered until *after* the suspension has been effectuated.  *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005) (stating that courts are to give words their plain meaning unless they are given a particular meaning by statutory definition or otherwise).

The undisputed facts demonstrate that the fire chief gave Dawson a letter on February 14, 2002, notifying her that she was being indefinitely suspended without pay from the fire department and that her employment was terminated effective at 0800 hours on February 15, 2002.  At 0800 hours on February 15, 2002, Dawson did not have a job with the fire department, and the clock began ticking for the fire department to file the written statement with the

9

Commission. During the 120 hours following the hour of suspension, Dawson remained discharged from the fire department. Based on the plain language of the statute, the written statement was not required to be filed *before* Dawson's suspension was effective; rather, the filing of the written statement with the Commission is a step taken *after* a fire fighter has been suspended. The fire department's failure to file the required written statement with the Commission did not undo the suspension,[3] which took effect at 0800 hours on February 15, 2002. Thus, the summary judgment evidence conclusively establishes that the fire department indefinitely suspended Dawson effective February 15, 2002. *See* TEX. LOC. GOV'T CODE ANN. § 143.052(c); *Stowe v. City of Corpus Christi*, 358 S.W.2d 409, 410 (Tex. Civ. App.—Eastland 1962, writ ref'd n.r.e.) (stating that, under prior version of statute, police officer was indefinitely suspended by chief of police on February 28, 1959, and that within 120 hours after the indefinite suspension, on March 4, 1959, the chief filed with the Commission a written statement giving the reasons for suspension); *see also Bichsel v. Carver*, 159 Tex. 393, 397, 321 S.W.2d 284, 287 (1959) (stating in dicta that even assuming statute did not prohibit the filing of a second set of

---

[3] This is not meant to convey that the failure to file the written statement had no effect at all. Rather, as Carr concedes, the fire department's failure to file the written statement with the Commission warranted Dawson's subsequent reinstatement, which we discuss below.

10

charges, the second charges were not filed within 120 hours of officer's suspension and therefore required reinstatement but did not void suspension). *But see City of Beaumont v. Spivey*, 1 S.W.3d 385, 391 (Tex. App.—Beaumont 1999, pet. denied) (holding that police officer was not entitled to protection under chapter 143 because he cheated on his entry level police civil service examination, thus rendering his initial employment void ab initio).

## B. Suspension Created Vacancy

Carr argues that because the fire chief's discharge of Dawson on February 15, 2002, was not void ab initio, Dawson's discharge created a vacancy in the rank of fire engineer on that date. Appellees argue that no vacancy was created and that an indefinite suspension does not create a vacancy.

At the time of Dawson's indefinite suspension on February 15, 2002, local government code section 143.036(a) read as follows: "When a vacancy occurs in a nonentry position that is not appointed by the department head as provided by Sections 143.014 and 143.102, the vacancy shall be filled as prescribed by this section and Section 143.108, as applicable." Act of May 21, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 900 (amended 2005) (current version at TEX. LOC. GOV'T CODE ANN. § 143.036(a) (Vernon 2008)). The current version contains the above text, along with the following: "A vacancy in a fire fighter position described by this subsection occurs on the

11

date the position is vacated by: . . . (5) issuance of an indefinite suspension in accordance with Section 143.052(b)." TEX. LOC. GOV'T CODE ANN. § 143.036(a) (Vernon 2008). The parties dispute whether the 2005 amendment to the statute was intended to apply to pending and subsequently filed cases. However, both section 143.052(b) and Local Civil Service Rule 11.19 were in effect in 2002 and stated that "[a]n indefinite suspension is equivalent to dismissal from the department." TEX. LOC. GOV'T CODE ANN. § 143.052(b).

Even assuming that the previous version of the statute—which did not contain a definition of "vacancy"—applies, rules existed specifying that an indefinite suspension equated to a vacancy because the person had been dismissed from the department. Based on the plain language of the statute and prior precedent from this court, the summary judgment evidence conclusively establishes that Dawson's indefinite suspension created a vacancy on February 15, 2002. *See City of Fort Worth v. Nyborg*, 999 S.W.2d 451, 456–57 (Tex. App.—Fort Worth 1999, pet. denied) (stating that based on plain language of the ordinance, the lieutenant's position was not abolished before Nyborg was entitled to be promoted, so a vacancy existed, albeit for a brief time);[4] *see also*

---

[4] In light of our statutory analysis regarding Dawson's suspension, we decline to follow *City of Harlingen v. Alvarez*, 204 S.W.3d 452, 460 (Tex. App.—Corpus Christi 2005, pet. granted, judgm't vacated w.r.m.) (holding that fire fighter's indefinite suspension did not create a vacancy and that a vacancy

12

*Mendiola v. City of Laredo*, 239 S.W.3d 344, 346 (Tex. App.—San Antonio 2007, no pet.) (holding that vacancy occurred in the rank of fire driver as a matter of law on date that fire captain's promotion was made effective).

## C. Fire Chief Had Nondiscretionary Duty to Fill Vacancy from Eligibility List

Because Dawson's suspension created a vacancy, we now address whether the fire chief was required to fill the vacancy from the existing fire engineer promotion eligibility list. Texas courts have repeatedly held that a department head's duty to fill a vacancy from a promotion eligibility list is mandatory—he or she has no discretion to not fill the vacancy. *Int'l Ass'n of Firefighters, Local Union No. 936 v. Townsend*, 622 S.W.2d 562, 563 (Tex. 1981). If a vacancy arises before a promotion eligibility list expires or is exhausted, the department head is required to fill the vacancy by permanent appointment from the list within sixty days after the date the vacancy occurs. TEX. LOC. GOV'T CODE ANN. § 143.036(e). Although Appellees contend that the fire chief properly filled any such vacancy by reinstating Dawson, their contention runs afoul of chapter 143's requirements for filling vacancies. Because the parties do not dispute that a fire engineer promotion eligibility list

occurred only after the Commission made a finding of the truth of the charges against the fire fighter).

existed at 0800 hours on February 15, 2002,[5] the fire chief was required by chapter 143 to use such list to fill the vacancy in the rank of fire engineer that occurred then.  *See* TEX. LOC. GOV'T CODE ANN. § 143.036(b), (e).

### D.  Carr Topped Eligibility List

In his next subissue, Carr argues that as the top-ranked candidate on the fire engineer promotion eligibility list, he was entitled to promotion.  After maneuvering through the procedural hoops, we agree.

On February 15, 2002, when Dawson's suspension took effect, the highest ranked individual on the fire engineer promotion eligibility list was Calvin Lyons; Carr was second on the list at that time.  However, Lyons was later promoted retroactive to November 2001 as a result of a separate litigation.  Accordingly, the end result of that litigation was that Carr moved to first on the fire engineer promotion eligibility list and was there at the time when Dawson's suspension created a vacancy.  Carr, therefore, was entitled to be promoted within sixty days of the February 15, 2002 vacancy.  *See* TEX. LOC. GOV'T CODE ANN. § 143.036(e).  Because Appellees did not promote Carr to fill the vacancy created by Dawson's suspension, they violated the provisions for filling a

---

[5] On March 14, 2001, Fort Worth created a promotion eligibility list for the fire engineer position, and the list was to remain in effect until March 13, 2002.

14

vacancy under chapter 143.[6]  The trial court, moreover, erred by granting Appellees' motion for summary judgment and by denying Carr's motion for summary judgment on this issue.  We therefore sustain Carr's first issue to the extent that Appellees failed to promote him to fill the vacancy created by Dawson's suspension on February 15, 2002.

## VI.  ISSUES NOT REACHED BY TRIAL COURT

In the last subissue under Carr's first issue, he argues that he is entitled to mandamus relief from the trial court.[7]  In Carr's second and third issues, he

---

[6] During the sixty-day period that Appellees had under section 143.036(c) to fill the vacancy, Dawson was entitled to be reinstated due to Appellees' failure to file the written statement with the Commission.  *See generally* TEX. LOC. GOV'T CODE ANN. § 143.052(f) (stating that if the department head does not specifically point out in the written statement the acts of the fire fighter that allegedly violated the civil service rules, the Commission shall promptly reinstate the person).  But Dawson's reinstatement does not affect Appellees' duty to fill a vacancy using the promotion eligibility list; the proper procedure would have been for Appellees to follow the statutory procedure triggered when a position is vacated and to have promoted Carr to fire engineer, then demoted him back to his previous position when Dawson was reinstated, and to then have placed him on the fire engineer's reinstatement list.  *See Nyborg*, 999 S.W.2d at 456–57.  When the next opening in the rank of fire engineer occurred on August 24, 2002, Carr could then have been promoted off the reinstatement list at that time.  *See id.* at 457; *see also Bostick v. Owens*, 423 S.W.2d 471, 472 (Tex. Civ. App.—Fort Worth 1968, writ ref'd n.r.e.) (holding that top person on eligibility list on date of vacancy should be promoted even if list expires during the time that the vacancy can be filled).

[7] Specifically, Carr's second amended petition requested that the trial court issue a writ of mandamus compelling the fire chief to promote Carr to the

15

argues that his backpay claim is not barred by governmental immunity and that he is entitled to an award of attorney's fees and costs. Appellees argue that Carr is not entitled to mandamus relief, that governmental immunity is not waived, and that Carr's claims for backpay, as well as his claims for attorney's fees and costs under the Declaratory Judgment Act, are barred by governmental immunity. Because the summary judgment evidence conclusively established that a suspension occurred, that the suspension created a vacancy, that the fire chief was required to fill the vacancy from the promotion eligibility list, and that Carr was the top-ranked candidate on the promotion eligibility list, the trial court erred by granting Appellees' motion for summary judgment and by denying Carr's motion for summary judgment on this issue. Consequently the trial court did not reach Carr's claims for mandamus relief and backpay, or his claims for attorney's fees and costs under the Declaratory Judgment Act.

When the trial court has not reached the governmental immunity issue in cases under chapter 143 of the local government code, the Texas Supreme Court has found "it preferable to remand this claim to the trial court to consider in the first instance" "whether the City's immunity from suit is waived by

---

rank of fire engineer retroactive to August 24, 2002, "with all seniority and other benefits which he would have received had he been promoted on that date." On appeal, Carr prays that we grant him equitable relief "in the form of backpay and benefits."

sections 271.151–.160 of the Local Government Code or other statutory provisions." *See City of Houston v. Williams*, 216 S.W.3d 827, 829 (Tex. 2007); *City of Sweetwater v. Waddell*, 218 S.W.3d 80, 81 (Tex. 2007). We therefore follow the supreme court's lead and remand the issues of governmental immunity as applied to mandamus relief, backpay, attorney's fees, and costs to the trial court for further proceedings consistent with this opinion. *See Williams*, 216 S.W.3d at 829; *Waddell*, 218 S.W.3d at 81; *see generally* TEX. LOC. GOV'T CODE ANN. §§ 143.108(d), 180.006, 271.152; *City of Houston v. Hildebrandt*, No. 01-06-00936-CV, 2008 WL 525417, at *1–4 (Tex. App.—Houston [1st Dist.] Feb. 28, 2008, pet. filed) (holding that governmental immunity was waived because statute allowed for penalty); *City of Round Rock v. Whiteaker*, 241 S.W.3d 609, 623–42 (Tex. App.—Austin 2007, pet. filed) (analyzing governmental immunity as applied to fire lieutenant's claims for declaratory, mandamus, and injunctive relief); *City of Seagoville v. Lytle*, 227 S.W.3d 401, 410–15 (Tex. App.—Dallas 2007, no pet.) (analyzing governmental immunity as applied to police officer's claims for declaratory, mandamus, and injunctive relief and analyzing official immunity).

## VII. CONCLUSION

Having sustained Carr's first issue to the extent that Appellees failed to promote him to fill the vacancy created by Dawson's suspension on February

17

15, 2002, we reverse the trial court's order denying his motion for summary judgment and granting Appellees' motion for summary judgment. Having determined that the trial court did not reach the issues of governmental immunity as applied to mandamus relief, backpay, attorney's fees, and costs, we remand those issues for further proceedings consistent with this opinion.

SUE WALKER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: August 26, 2008

18